FILED

2019 APR 24  AM 11: 41

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

1  NICOLA T. HANNA
   United States Attorney
2  LAWRENCE S. MIDDLETON
   Assistant United States Attorney
3  Chief, Criminal Division
   RUTH C. PINKEL (Cal. Bar No. 164770)
4  LINDSEY GREER DOTSON (Cal. Bar No. 266973)
   Assistant United States Attorneys
5  Public Corruption and Civil Rights Section
        1500 United States Courthouse
6       312 North Spring Street
        Los Angeles, California 90012
7       Telephone: (213) 894-6077/4443
        Facsimile: (213) 894-7631
8       E-mail:    ruth.pinkel@usdoj.gov
                   lindsey.dotson@usdoj.gov
9
   Attorneys for Plaintiff
10 UNITED STATES OF AMERICA

11             UNITED STATES DISTRICT COURT

12         FOR THE CENTRAL DISTRICT OF CALIFORNIA

13 UNITED STATES OF AMERICA,          No. CR 19 CR 00258 - JAK

14             Plaintiff,             PLEA AGREEMENT FOR DEFENDANT
                                      MOHAMMAD R. TIRMAZI
15             v.

16 MOHAMMAD R. TIRMAZI,

17             Defendant.

18

19      1.   This constitutes the plea agreement between MOHAMMAD R.

20 TIRMAZI ("defendant") and the United States Attorney's Office for the

21 Central District of California ("the USAO") in the above-captioned

22 case.  This agreement is limited to the USAO and cannot bind any

23 other federal, state, local, or foreign prosecuting, enforcement,

24 administrative, or regulatory authorities.

25                     DEFENDANT'S OBLIGATIONS

26      2.   Defendant agrees to:

27           a.   Give up the right to indictment by a grand jury and,

28 at the earliest opportunity requested by the USAO and provided by the

1  Court, appear and plead guilty to a two-count information in the form

2  attached to this agreement as Exhibit A or a substantially similar

3  form, which charges defendant with Federal Program Bribery in

4  violation of 18 U.S.C. § 666(a)(1)(B) and Subscribing to a False Tax

5  Return in violation of 26 U.S.C. § 7206(1).

6         b.   Not contest facts agreed to in this agreement.

7         c.   Abide by all agreements regarding sentencing contained

8  in this agreement.

9         d.   Appear for all court appearances, surrender as ordered

10  for service of sentence, obey all conditions of any bond, and obey

11  any other ongoing court order in this matter.

12         e.   Not commit any crime; however, offenses that would be

13  excluded for sentencing purposes under United States Sentencing

14  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

15  within the scope of this agreement.

16         f.   Be truthful at all times with the United States

17  Probation and Pretrial Services Office and the Court.

18         g.   Pay the applicable special assessments at or before

19  the time of sentencing unless defendant lacks the ability to pay and

20  prior to sentencing submits a completed financial statement on a form

21  to be provided by the USAO.

22         h.   Make restitution at or before the time of sentencing,

23  and not seek the discharge of any restitution obligation, in whole or

24  in part, in any present or future bankruptcy proceeding.

25     3.   Defendant admits that defendant received $355,107 of

26  unreported income for 2014 to 2016, which consists of the following

27  amounts for the following years:  $500 (2014); $161,807 (2015); and

28  $192,800 (2016).  Defendant agrees that:

a.   Defendant will file, prior to the time of sentencing, amended returns for the years subject to the above admissions, correctly reporting unreported income; will, if requested to do so by the Internal Revenue Service, provide the Internal Revenue Service with information regarding the years covered by the returns; will pay at or before sentencing all additional taxes and all penalties and interest assessed by the Internal Revenue Service on the basis of the returns; and will promptly pay all additional taxes and all penalties and interest thereafter determined by the Internal Revenue Service to be owing as a result of any computational errors.

b.   Nothing in this agreement forecloses or limits the ability of the Internal Revenue Service to examine and make adjustments to defendant's returns after they are filed.

c.   Defendant will not, after filing the returns, file any claim for refund of taxes, penalties, or interest for amounts attributable to the returns filed in connection with this plea agreement.

d.   Defendant is liable for the fraud penalty imposed by the Internal Revenue Code, 26 U.S.C. § 6663, on the understatements of tax liability for 2014, 2015, and 2016.

e.   Defendant gives up any and all objections that could be asserted to the Examination Division of the Internal Revenue Service receiving materials or information obtained during the criminal investigation of this matter, including materials and information obtained through grand jury subpoenas.

f.   Defendant will sign closing agreements with the Internal Revenue Service contemporaneously with the signing of this plea agreement, permitting the Internal Revenue Service to assess and

3

collect the total sum of $120,303.00 ($130, $54,883, $65,290 for the defendant's tax years 2014, 2015, and 2016, respectively), which comprises the tax liabilities, as well as assess and collect the civil fraud penalty for each year and statutory interest, on the tax liabilities, as provided by law.

4.   Defendant further agrees to cooperate fully with the USAO, the Federal Bureau of Investigation and the Internal Revenue Service, and, as directed by the USAO, any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.   This cooperation requires defendant to:

a.   Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

b.   Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the USAO or compelled by subpoena or court order.

c.   Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the USAO, or its designee, inquires.

5.   For purposes of this agreement: (1) "Cooperation Information" shall mean any statements made, or documents, records, tangible evidence, or other information provided, by defendant pursuant to defendant's cooperation under this agreement or pursuant to the letter agreement previously entered into by the parties dated July 20, 2018 (the "Letter Agreement"); and (2) "Plea Information" shall mean any statements made by defendant, under oath, at the guilty plea hearing and the agreed to factual basis statement in this agreement.

THE USAO'S OBLIGATIONS

6.    The USAO agrees to:

       a.    Not contest facts agreed to in this agreement.

       b.    Abide by all agreements regarding sentencing contained in this agreement.

       c.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

       d.    With respect to counts one and two, recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

7.    The USAO further agrees:

       a.    Not to offer as evidence in its case-in-chief in the above-captioned case or any other criminal prosecution that may be brought against defendant by the USAO, or in connection with any sentencing proceeding in any criminal case that may be brought against defendant by the USAO, any Cooperation Information. Defendant agrees, however, that the USAO may use both Cooperation Information and Plea Information: (1) to obtain and pursue leads to other evidence, which evidence may be used for any purpose, including any criminal prosecution of defendant; (2) to cross-examine defendant should defendant testify, or to rebut any evidence offered, or argument or representation made, by defendant, defendant's counsel,

1  or a witness called by defendant in any trial, sentencing hearing, or
2  other court proceeding; and (3) in any criminal prosecution of
3  defendant for false statement, obstruction of justice, or perjury.

4      b.    Not to use Cooperation Information against defendant
5  at sentencing for the purpose of determining the applicable guideline
6  range, including the appropriateness of an upward departure, or the
7  sentence to be imposed, and to recommend to the Court that
8  Cooperation Information not be used in determining the applicable
9  guideline range or the sentence to be imposed.  Defendant
10 understands, however, that Cooperation Information will be disclosed
11 to the United States Probation and Pretrial Services Office and the
12 Court, and that the Court may use Cooperation Information for the
13 purposes set forth in U.S.S.G § 1B1.8(b) and for determining the
14 sentence to be imposed.

15      c.    In connection with defendant's sentencing, to bring to
16 the Court's attention the nature and extent of defendant's
17 cooperation.

18      d.    If the USAO determines, in its exclusive judgment,
19 that defendant has both complied with defendant's obligations under
20 paragraphs 2 and 3 above and provided substantial assistance to law
21 enforcement in the prosecution or investigation of another
22 ("substantial assistance"), to move the Court pursuant to U.S.S.G.
23 § 5K1.1 to fix an offense level and corresponding guideline range
24 below that otherwise dictated by the sentencing guidelines, and to
25 recommend a term of imprisonment within this reduced range.
26 //
27 //
28

<u>DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION</u>

8.   Defendant understands the following:

a.   Any knowingly false or misleading statement by defendant will subject defendant to prosecution for false statement, obstruction of justice, and perjury and will constitute a breach by defendant of this agreement.

b.   Nothing in this agreement requires the USAO or any other prosecuting, enforcement, administrative, or regulatory authority to accept any cooperation or assistance that defendant may offer, or to use it in any particular way.

c.   Defendant cannot withdraw defendant's guilty pleas if the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a reduced guideline range or if the USAO makes such a motion and the Court does not grant it or if the Court grants such a USAO motion but elects to sentence above the reduced range.

d.   At this time the USAO makes no agreement or representation as to whether any cooperation that defendant has provided or intends to provide constitutes or will constitute substantial assistance.  The decision whether defendant has provided substantial assistance will rest solely within the exclusive judgment of the USAO.

e.   The USAO's determination whether defendant has provided substantial assistance will not depend in any way on whether the government prevails at any trial or court hearing in which defendant testifies or in which the government otherwise presents information resulting from defendant's cooperation.

NATURE OF THE OFFENSES

9.    Defendant understands that for defendant to be guilty of the crime charged in count one, that is, Federal Program Bribery, in violation of Title 18, United States Code, Sections 666 (a)(1)(B), the following must be true: (1) defendant was an agent of the County of Los Angeles, a local government, or any agency thereof; (2) the County of Los Angeles received federal benefits in excess of $10,000 in a one-year period; (3) defendant solicited, demanded, accepted, or agreed to accept anything of value from another person; (4) defendant acted corruptly with the intent to be influenced or rewarded in connection with the business, transaction, or series of transactions of the County of Los Angeles; (5) the value of the business to which the payment related was at least $5,000.

10.   Defendant understands that for defendant to be guilty of the crime charged in count two, that is, Subscribing to False Tax Return, in violation of Title 26, United States Code, Section 7206(1), the following must be true: (1) defendant signed and filed a tax return for the year 2016 that he knew contained false information as to a material matter; (2) the return contained a written declaration that it was being signed subject to the penalties of perjury; and (3) in filing the false tax return, defendant acted willfully.  A matter is material if it had a natural tendency to influence, or was capable of influencing, the decisions or activities of the Internal Revenue Service.  A defendant acts willfully when defendant knows that federal tax law imposed a duty on defendant and defendant intentionally and voluntarily violated that duty.

<u>PENALTIES AND RESTITUTION</u>

11.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 666(a)(1)(B), is: ten years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

12.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 26, United States Code, Section 7206(1), is: three years imprisonment; a one-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

13.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 13 years imprisonment; a three-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

14.   Defendant understands and agrees that the Court: (a) may order defendant to pay restitution in the form of any additional taxes, interest, and penalties that defendant owes to the United States based upon the count of conviction and any relevant conduct, and restitution to the County of Los Angeles -- the victim of defendant's bribery; and (b) must order defendant to pay the costs of prosecution, which may be in addition to the statutory maximum fine stated above.

15.  Defendant understands that defendant will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  The parties currently believe that the applicable amount of non-tax restitution payable to the County of Los Angeles is approximately $300,000, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

16.  Defendant agrees to deliver a certified check or money order to the Clerk of the Court in the amount of $174,870.35, to be held by the Clerk of the Court until the date of sentencing and, thereafter, to be applied to satisfy defendant's financial obligations pursuant to the judgment of the Court.  The certified check or money order shall be made payable to "Clerk, United States District Court," reference the case name and case number on the "memo" line and be delivered to the Fiscal Department of the Clerk's Office at 255 East Temple Street, Room 1178, Los Angeles, CA 90012.

17.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.   Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

18.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition.   Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.   Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

19.   Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.   The court cannot, and defendant's attorney also may not be able to, advise defendant

1  fully regarding the immigration consequences of the felony conviction
2  in this case.  Defendant understands that unexpected immigration
3  consequences will not serve as grounds to withdraw defendant's guilty
4  plea.

<div align="center">FACTUAL BASIS</div>

6      20.  Defendant admits that defendant is, in fact, guilty of the
7  offenses to which defendant is agreeing to plead guilty.  Defendant
8  and the USAO agree to the statement of facts provided below and agree
9  that this statement of facts is sufficient to support pleas of guilty
10 to the charges described in this agreement and to establish the
11 Sentencing Guidelines factors set forth in paragraph 22 below but is
12 not meant to be a complete recitation of all facts relevant to the
13 underlying criminal conduct or all facts known to either party that
14 relate to that conduct.

**Background**

The County of Los Angeles (the "County") is a county government
located within the Central District of California.  The County
received in excess of $10,000 under federal programs for each of the
following years: 2014 to 2016.

At all times relevant to this plea agreement, defendant worked
in the County's Internal Services Department ("ISD").  Defendant was
a Supervising Telecom Engineer, and then in approximately 2016, he
became a Section Manager for the Voice Video and Application Division
of ISD.  Defendant was a public official and an agent of the County.

**The Tel-Pro Bribery Scheme**

Tel-Pro Voice & Data, Inc. ("Tel-Pro") was a vendor that
performed low voltage electrical wiring for, and received payment
from, the County.  At all times relevant to this plea agreement, the

value of the services provided by Tel-Pro, as well as the County's payments to Tel-Pro, exceeded $5,000.

From approximately late 2014 to 2016, defendant accepted bribe payments from the owner of Tel-Pro (the "Owner") totaling approximately $299,707. The Owner paid defendant with cash, checks, and in-kind gifts, including a security camera system valued at up to $15,000.

Below is a summary of the Owner's bribe payments to defendant:

| BRIBE AMOUNT CALCULATION | |
| --- | --- |
| **Source** | **Amount** |
| Cash [$500 + $11,600 + $9,800 + $9,600 + $9,000 + $28,000] | $68,500 |
| S.Z. Checks | $109,400 |
| TEQ Solutions Checks [$69,352 + $37,455] | $106,807 |
| Security System [Est. $10,000 to $15,000] | $15,000 |
| TOTAL | $299,707 |

In exchange for the bribe payments, defendant agreed to perform, and did in fact perform, the following official acts, among others, in his capacity as a public official and agent of the County: (i) approve change orders requested by the Owner for work that did not occur, materials that were not purchased or used, work or materials that were not necessary, and work or materials that were generally overpriced compared to the true cost to the Owner; and (ii) not report or force the Owner to correct violations of the County's Building and Safety Code or the National Electrical Code that defendant uncovered during inspections of work performed by Tel-Pro. Some of those violations related to asbestos removal and Tel-Pro's

13

failure to properly use ceiling hangers when installing cables.
Defendant generally considered Tel-Pro's work to be "shoddy" but
overlooked its poor work because of the bribe payments he was
receiving from the Owner.

The Owner paid defendant at least $68,500 in cash in exchange
for official acts.  To avoid drawing attention to the bribery scheme,
the Owner told defendant that any cash deposits defendant later made
to a bank should be under $10,000 to avoid mandatory bank reporting
requirements.  Defendant preferred to receive bribe payments in cash,
because he thought it would be harder for law enforcement to trace
the bribe payments.

The Owner also paid defendant at least $216,207 in checks in
exchange for official acts.  The Owner made the checks payable to
individuals or entities that were merely "straws" for defendant.
Instead of writing checks to defendant directly, the Owner and
defendant devised a scheme by which the Owner would write checks to
individuals or entities other than defendant, but who were controlled
by defendant, as a way to conceal the payments to defendant.
Defendant understood that the Owner paid defendant with checks so
that the Owner could falsely claim the payments to defendant as
business expenses, thereby lowering Tel-Pro's taxable income.

To further this scheme, the Owner also created fake invoices,
which he gave defendant, for work that defendant had not performed.
In addition, the Owner altered the dates on checks to make it appear
as though the checks were written on different dates.  For instance,
on at least one occasion, defendant received approximately four
checks of approximately $10,000 each from the Owner, for a total
between $40,000 and $50,000.  The amounts of the checks were random,

14

1   not tied to any actual work performed by defendant for the Owner, and

2   were, in fact, bribe payments for official acts by defendant.

3   **Facts Specific to Count One**

4       In or about September 2016, defendant and the Owner met at a

5   Starbucks in Chatsworth, California, where the Owner gave defendant

6   four checks totaling approximately $109,400 made payable to S.Z, a

7   "straw" for defendant.  These checks represented defendant's bribe

8   payments for approving fraudulent change orders in connection with

9   approximately nine different locations for the County Department of

10  Social Services ("DPSS").  (These checks are included within the

11  $216,207 amount described above.)

12      In or about mid-2017, the Owner alerted defendant to the fact

13  that the Owner was under federal investigation and stopped paying

14  bribes to defendant.

15  **The Side Cabling Business**

16      Defendant also had a side IT equipment related business,

17  including selling cables.  He purchased large boxes of cables for

18  below-market prices through Craigslist or eBay and then resold the

19  cables for a profit.  Although he is not certain, defendant

20  acknowledges that the cables he purchased for unusually low prices

21  may have been stolen.

22      Defendant sold cables to the Owner for a total of approximately

23  $55,400.  Because the Owner conducted business with the County and

24  defendant was a County employee, this undisclosed business

25  relationship presented a conflict for defendant.  To hide their

26  business dealings, the Owner made checks payable to third parties,

27  Individual A and Individual B, who then cashed the checks for

28  defendant.  The Owner also wrote multiple smaller checks, as opposed

to one large check, to avoid scrutiny by a bank or law enforcement.

**The TEQ Solutions Tax Fraud Scheme**

In approximately 2015, defendant formed a company called TEQ Solutions, LLC ("TEQ Solutions") as a way to conceal bribe payments to him from the Owner.  To hide his ownership of TEQ Solutions, defendant used a third party to file the business paperwork and open a bank account.  Defendant subsequently obtained access to the TEQ Solutions bank account and controlled deposits to and withdrawals from that account.

To conceal the bribery scheme with the Owner and lower TEQ Solutions' taxable income, defendant issued sham IRS Form 1099s to make it appear as though other individuals had received income from TEQ Solutions for work legitimately performed.  In 2015, defendant issued an IRS Form 1099 to Individual C for $50,000 and Individual D for $60,000.  In 2016, he issued an IRS Form 1099 to Individual C for $40,000 and Individual E for $30,000.  In truth and in fact, Individuals C, D, and E performed no work for TEQ Solutions and never received money from defendant or TEQ Solutions.

TEQ Solutions filed no tax returns.

**Facts Specific to Count Two**

On or about March 6, 2017, in Los Angeles County, within the Central District of California, defendant willfully made and subscribed to a materially false United States Individual Income Tax Return, Form 1040, for the calendar year 2016, which defendant verified by a written declaration that it was made under penalty of perjury, and filed such tax return with the Internal Revenue Service, which defendant did not believe to be true and correct as to every material matter in that it failed to report the additional income for

2016 described herein.  Specifically, the tax return reported total income of $166,730 and failed to disclose additional income of $192,800.

The false information provided by defendant was material in that it affected the Internal Revenue Service's ("IRS") calculation of the amount of income earned and prevented the IRS from verifying the accuracy of the amount of tax claimed to be owed on defendant's return.  Defendant acted willfully.  Defendant knew that the law required him to report all income accurately and to pay all income tax that was due and owing.  Defendant voluntarily and intentionally violated that duty.

**Tax Due and Owing on Unreported Income**

For calendar years 2014 to 2016, defendant failed to report a total of $355,107 of income he received from the bribery and cabling payments described above, which consists of the following amounts for the following years: $500 (2014); $161,807 (2015); and $192,800 (2016).  Defendant's unreported income for 2016 included approximately $137,400 in bribe payments.

Defendant's underreporting of income resulted in lowering the taxes reported as due and owing on his Form 1040 individual tax returns.  As a result of defendant's conduct, defendant owes additional taxes totaling $120,303, which consists of the following amounts for the following tax years: $130 (2014); $54,883 (2015); and $65,290 (2016).

<center>SENTENCING FACTORS</center>

21.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures

1   under the Sentencing Guidelines, and the other sentencing factors set

2   forth in 18 U.S.C. § 3553(a).  Defendant understands that the

3   Sentencing Guidelines are advisory only, that defendant cannot have

4   any expectation of receiving a sentence within the calculated

5   Sentencing Guidelines range, and that after considering the

6   Sentencing Guidelines and the other § 3553(a) factors, the Court will

7   be free to exercise its discretion to impose any sentence it finds

8   appropriate up to the maximum set by statute for the crimes of

9   conviction.

10      22.  Defendant and the USAO agree to the following applicable

11  Sentencing Guidelines factors:

12  <u>Count One (Bribery)</u>

13  Base Offense Level:              14      [U.S.S.G. § 2C1.1(a)(1)]

14  *Specific Offense*
    *Characteristics*
15
        Multiple bribes          +2      [U.S.S.G. § 2C1.1(b)(1)]
16
    Value of bribes              +12     [U.S.S.G. §§ 2C1.1(b)(2),
17                                                   2B1.1(b)(1)(G)]
    High-level decision-
18  making official              +4      [U.S.S.G. § 2C1.1(b)(3)]

19  <u>Count Two (Tax)</u>

20  Base Offense Level:          16      [U.S.S.G. §§ 2T1.1(a)(1),
21  [$120,303 tax loss]                              2T4.1(F)]

22  *Specific Offense*
    *Characteristics*
23
        Failure to report income
24      over $10,000 from crimes    +2      [U.S.S.G. § 2T1.1(b)(1)]

25  **Multi-Count Adjustment**        0           [U.S.S.G. §§ 3D1.1,
26                                                   3D1.3, 3D1.4]

27

28

18

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

23.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

24.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

## WAIVER OF CONSTITUTIONAL RIGHTS

25.  Defendant understands that by pleading guilty, defendant gives up the following rights:

> a.  The right to persist in a plea of not guilty.

> b.  The right to a speedy and public trial by jury.

> c.  The right to be represented by counsel – and if necessary have the court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the court appoint counsel -- at every other stage of the proceeding.

> d.  The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

> e.  The right to confront and cross-examine witnesses against defendant.

> f.  The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

1       g.   The right not to be compelled to testify, and, if
2  defendant chose not to testify or present evidence, to have that
3  choice not be used against defendant.

4       h.   Any and all rights to pursue any affirmative defenses,
5  Fourth Amendment or Fifth Amendment claims, and other pretrial
6  motions that have been filed or could be filed.

7                    WAIVER OF APPEAL OF CONVICTION

8     26.  Defendant understands that, with the exception of an appeal
9  based on a claim that defendant's guilty pleas were involuntary, by
10  pleading guilty defendant is waiving and giving up any right to
11  appeal defendant's convictions on the offenses to which defendant is
12  pleading guilty. Defendant understands that this waiver includes, but
13  is not limited to, arguments that the statutes to which defendant is
14  pleading guilty are unconstitutional, and any and all claims that the
15  statement of facts provided herein is insufficient to support
16  defendant's pleas of guilty.

17          LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

18     27.  Defendant agrees that, provided the Court imposes a total
19  term of imprisonment on all counts of conviction of no more than 151
20  months, defendant gives up the right to appeal all of the following:
21  (a) the procedures and calculations used to determine and impose any
22  portion of the sentence; (b) the term of imprisonment imposed by the
23  Court; (c) the fine imposed by the court, provided it is within the
24  statutory maximum; (d) to the extent permitted by law, the
25  constitutionality or legality of defendant's sentence, provided it is
26  within the statutory maximum; (e) the amount and terms of any
27  restitution order provided it requires payment of no more than
28  $300,000 (to Los Angeles County) relating to bribery and $120,303

relating to the tax charge; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in General Order 18-10 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d).

28. The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment of no less than 121 months, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the following: (a) the amount of restitution ordered if that amount is less than $300,000 relating to bribery and $120,303 relating to the tax charge.

### RESULT OF WITHDRAWAL OF GUILTY PLEA

29. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement, including in particular its obligations regarding the use of Cooperation Information; (b) in any investigation, criminal prosecution, or civil, administrative, or regulatory action, defendant agrees that any Cooperation Information and any evidence derived from any Cooperation Information shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, or any federal rule, that any Cooperation

1  Information or any evidence derived from any Cooperation Information
2  should be suppressed or is inadmissible; and (c) should the USAO
3  choose to pursue any charge that was either dismissed or not filed as
4  a result of this agreement, then (i) any applicable statute of
5  limitations will be tolled between the date of defendant's signing of
6  this agreement and the filing commencing any such action; and
7  (ii) defendant waives and gives up all defenses based on the statute
8  of limitations, any claim of pre-indictment delay, or any speedy
9  trial claim with respect to any such action, except to the extent
10 that such defenses existed as of the date of defendant's signing this
11 agreement.

<div align="center">EFFECTIVE DATE OF AGREEMENT</div>

13      30.   This agreement is effective upon signature and execution of
14 all required certifications by defendant, defendant's counsel, and an
15 Assistant United States Attorney.

<div align="center">BREACH OF AGREEMENT</div>

17      31.   Defendant agrees that if defendant, at any time after the
18 signature of this agreement and execution of all required
19 certifications by defendant, defendant's counsel, and an Assistant
20 United States Attorney, knowingly violates or fails to perform any of
21 defendant's obligations under this agreement ("a breach"), the USAO
22 may declare this agreement breached.  For example, if defendant
23 knowingly, in an interview, before a grand jury, or at trial, falsely
24 accuses another person of criminal conduct or falsely minimizes
25 defendant's own role, or the role of another, in criminal conduct,
26 defendant will have breached this agreement.  All of defendant's
27 obligations are material, a single breach of this agreement is
28 sufficient for the USAO to declare a breach, and defendant shall not

be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then:

a.   If defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas.

b.   The USAO will be relieved of all its obligations under this agreement; in particular, the USAO: (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crimes to which defendant has pleaded guilty; and (iii) will no longer be bound by any agreement regarding the use of Cooperation Information and will be free to use any Cooperation Information in any way in any investigation, criminal prosecution, or civil, administrative, or regulatory action.

c.   The USAO will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

d.   In any investigation, criminal prosecution, or civil, administrative, or regulatory action: (i) defendant will not assert, and hereby waives and gives up, any claim that any Cooperation Information was obtained in violation of the Fifth Amendment privilege against compelled self-incrimination; and (ii) defendant agrees that any Cooperation Information and any Plea Information, as well as any evidence derived from any Cooperation Information or any Plea Information, shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, Rule 410 of the

23

1  Federal Rules of Evidence, Rule 11(f) of the Federal Rules of
2  Criminal Procedure, or any other federal rule, that any Cooperation
3  Information, any Plea Information, or any evidence derived from any
4  Cooperation Information or any Plea Information should be suppressed
5  or is inadmissible.

6  <center>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</center>
7  <center>OFFICE NOT PARTIES</center>

8     32.  Defendant understands that the Court and the United States
9  Probation and Pretrial Services Office are not parties to this
10 agreement and need not accept any of the USAO's sentencing
11 recommendations or the parties' agreements to facts or sentencing
12 factors.

13    33.  Defendant understands that both defendant and the USAO are
14 free to: (a) supplement the facts by supplying relevant information
15 to the United States Probation and Pretrial Services Office and the
16 Court, (b) correct any and all factual misstatements relating to the
17 Court's Sentencing Guidelines calculations and determination of
18 sentence, and (c) argue on appeal and collateral review that the
19 Court's Sentencing Guidelines calculations and the sentence it
20 chooses to impose are not error, although each party agrees to
21 maintain its view that the calculations in paragraph 22 are
22 consistent with the facts of this case.  While this paragraph permits
23 both the USAO and defendant to submit full and complete factual
24 information to the United States Probation and Pretrial Services
25 Office and the Court, even if that factual information may be viewed
26 as inconsistent with the facts agreed to in this agreement, this
27 paragraph does not affect defendant's and the USAO's obligations not
28 to contest the facts agreed to in this agreement.

<center>24</center>

34.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.   Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

35.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

//

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

36.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

NICOLA T. HANNA
United States Attorney

_____          April 9, 2019
RUTH C. PINKEL/LINDSEY GREER DOTSON    Date
Assistant United States Attorneys

_____          3-26-19
MOHAMMAD R. TIRMAZI                 Date
Defendant

_____          3/26/19
JEREMY N. GOLDMAN                   Date
Attorney for Defendant MOHAMMED R.
TIRMAZI

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those

26

contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____     _____3-26-19._____
MOHAMMAD R. TIRMAZI                    Date
Defendant

### CERTIFICATION OF DEFENDANT'S ATTORNEY

I am MOHAMMAD R. TIRMAZI's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____     _____3-26·19_____
JEREMY N. GOLDMAN                      Date
Attorney for Defendant MOHAMMAD R.
TIRMAZI

27

# EXHIBIT A

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,          CR No. 19-

11              Plaintiff,              I N F O R M A T I O N

12        v.                            [18 U.S.C. § 666(a)(1)(B): Bribery
                                        Concerning Programs Receiving
13   MOHAMMAD R. TIRMAZI,               Federal Funds; 26 U.S.C.
                                        § 7206(1): Subscribing to False
14              Defendant.              Tax Return]

15

16        The United States Attorney charges:

17                          INTRODUCTORY ALLEGATIONS

18        At all times relevant to this Information:

19        1.   Defendant MOHAMMAD R. TIRMAZI ("TIRMAZI") worked in the Los

20   Angeles County (the "County") Internal Services Department ("ISD").

21   TIRMAZI was a Supervising Telecom Engineer, and then in approximately

22   2016, he became a Section Manager for the Voice Video and Application

23   Division of ISD.  Defendant was a public official and an agent of the

24   County.

25        2.   Tel-Pro Voice & Data, Inc. ("Tel-Pro") was a vendor that

26   performed low voltage electrical wiring for, and received payment

27   //

28   RCP: rcp

1 from, the County.  At all times relevant to this Information, the

2 value of the services provided by Tel-Pro, as well as the County's

3 payments to Tel-Pro, exceeded $5,000.

4     3.    From approximately late 2014 to 2016, defendant accepted

5 bribe payments from the owner of Tel-Pro (the "Owner") totaling

6 approximately $299,707.  The Owner paid defendant with cash, checks,

7 and in-kind gifts, including a security camera system valued at up to

8 $15,000.

9     4.    The County was a local government that received, every

10 calendar year between 2014 and 2016, benefits in excess of $10,000

11 under a Federal program involving a grant, contract, subsidy, loan,

12 guarantee, insurance, or other form of Federal assistance.  In fact,

13 multiple County departments or agencies, including but not limited to

14 the Department of Public Social Services ("DPSS"), received Federal

15 assistance that exceeded $10,000 every calendar year between 2014 and

16 2016.

COUNT ONE

[18 U.S.C. § 666(a)(1)(B)]

In or about September 2016, in Los Angeles County, within the Central District of California, defendant MOHAMMAD R. TIRMAZI, an agent of the County of Los Angeles, corruptly solicited, demanded, accepted, and agreed to accept things of value from the Owner, namely, $109,400 in checks, intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of the County of Los Angeles, having a value of $5,000 or more, specifically, approving fraudulent change orders in connection with low voltage wiring installed for the County's Department of Public Social Services.

3

COUNT TWO

[26 U.S.C. § 7206(1)]

On or about March 6, 2017, in Los Angeles County, within the Central District of California, defendant MOHAMMAD R. TIRMAZI ("TIRMAZI") willfully made and subscribed to a materially false U.S. Individual Income Tax Return, Form 1040, for the calendar year 2016, which defendant TIRMAZI verified by a written declaration that it was made under penalty of perjury, and filed such tax return with the Internal Revenue Service, which defendant TIRMAZI did not believe to be true and correct as to every material matter, in that the tax return reported total income of $166,730 when, in fact, as defendant TIRMAZI then knew, he failed to report additional income of $192,800 for calendar year 2016.

NICOLA T. HANNA
United States Attorney


LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

MACK E. JENKINS
Assistant United States Attorney
Chief, Public Corruption and Civil
Rights Section

RUTH C. PINKEL
Assistant United States Attorney
Public Corruption and Civil Rights
Section

LINDSEY GREER DOTSON
Assistant United States Attorney
Public Corruption and Civil Rights
Section

4

**PROOF OF SERVICE**

I, Sandy Ear, declare:

That I am a citizen of the United States and a resident of or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction the service by mail described in this Certificate was made; that on April 24, 2019, I deposited in the United States mail at the United States Courthouse in the above-titled action, in an envelope bearing the requisite postage, a copy of: **PLEA AGREEMENT FOR DEFENDANT MOHAMMAD R. TIRMAZI**

service was:

☐ Placed in a closed envelope for collection and inter-office delivery, addressed as follows:

☒ Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows:

☐ By hand delivery, addressed as follows:

☐ By facsimile, as follows:

☐ By messenger, as follows:

☐ By Federal Express, as follows:

Jeremy N. Goldman
19200 Von Karman Ave., Suite 300
Irvine, CA 92612

at his last known address, at which place there is a delivery service by United States mail.

1    This Certificate is executed on April 24, 2019, at Los Angeles,

2  California.    I certify under penalty of perjury that the foregoing

3  is true and correct.

4

5

6                                    _____

7                                    SANDY EAR
                                     Legal Assistant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28